# BRIGGS, & a. Admr's, v. WALKER & Trustee.

When, upon the disclosure of a trustee, it shall appear, that he holds the possession of personal property of the principal debtor, subject to any pledge, lien, or mortgage, and that the same, at the time of the disclosure, has not been sold; and it shall not appear affirmatively that the value of the property, or the price that might be obtained for it, upon sale or other lawful disposition of it, would not exceed the amount of the pledge, mortgage, or other lien, in virtue of the provisions of ch. 208, § 16, of the Revised Statutes, it will ordinarily be the duty of the court to appoint a receiver, to test the value of the property, and dispose of the same, under their instructions.

In such case, if the property cannot be disposed of by the receiver, for a greater sum than the amount to which the trustee is entitled, the property will not be sold or otherwise disposed of, but will be restored to the trustee; and instructions will be given the receiver accordingly.

But if such greater amount can be obtained for it, it will be the duty of the receiver to dispose of the same, and to apply the avails according to instructions given by the court appointing the receiver.

FOREIGN ATTACHMENT. In answer to the usual interrogatory proposed to the trustee, before the commissioner appointed to

take the disclosure, the trustee disclosed as follows, namely:
"At the time of the service of the plaintiff's writ upon me, as
trustee of Phineas Walker, I had in my hands and possession,
one yoke of 'oxen, one pair of three years old steers, thirty-nine
cows and heifers, twenty-seven two years old cattle, eighteen
yearlings, twenty-two calves, one bay horse, nineteen hogs and
pigs, fifty tons of hay, a lot of grain, a lot of hay at farm on the
hill, a lot of sheep, subsequently sold to Daniel Brooks, for one
hundred forty-seven dollars and ninety cents, a lot of hay and
grain on a farm in Springfield, two ox wagons, one two-horse
wagon, a lot of farming tools and dairy utensils, a lot of lumber,
and $515 in cash. I also held in my own name two shares in
the Connecticut River Bank, of $600 each. I also held a mort-
gage of a farm in Charlestown, called the Bowker farm, and of
whatever interest said Phineas had in a place in Springfield,
Vermont, called the Parker place, being, as I believe, worth
about five or six hundred dollars. The above property was
mortgaged and transferred to me, for signing several notes to
David Holton and David Holton, Jr., amounting to about
$6,700 ; and also a note to the Connecticut River Savings
Bank, for the sum of two thousand dollars ; on which liabilities
I am still holden as follows: to David Holton, in the sum of
$4,526.66, and interest from some time in November last, and
to the Savings Bank, to the amount of about $1,435 ; having
paid the sum of $565, and interest, according to my best know-
ledge and recollection. I have had the use or income of the
Bowker farm to this time, and also the use or income of the
Parker farm and of the Walker farm in Springfield, Vermont,
for the year 1848. I am not able to tell the amount of income
from said farm at this time ; and I have no recollection of any
other property coming into my hands since the service of said
writ on me.

"The present year, I have rented the Bowker farm for the
sum of one hundred dollars. I have also rented the Parker
farm, for the present year, for two hundred dollars, and the
tenant has the right to pay said rent as follows, namely: twenty
tons of hay, at five dollars per ton, and one hundred bushels of

6 *

corn, at three and nine-pence per bushel; and the remainder of said two hundred dollars in cash, as he may elect. I have, also, a lot of brooms, some grass seed, wood, and fuel.

"There are, also, seventeen yearling cattle, the produce, in 1848, of the stock above referred to, and a number of calves, of the present year, some of which have been sold; the others are still on hand."

To a further interrogatory, the trustee answered as follows, namely: "I have now in my possession all the said property, transferred to me by mortgage or otherwise, by Phineas Walker, except the following, namely: one yoke of steers, four heifers, fourteen other steers, and three cows, which have been sold for $530.06, of which sum, $25 was received in hay and fodder, and fed out to the stock; one heifer, which has died in the pasture; the horse, which has died from an accident; the hogs and pigs, which have been sold with the produce of the Parker and Walker farms; a part of the hay, of which all but about ten tons, as I estimate, (which is now on hand,) has been fed out to the stock; a part of the grain, including that returned as attached in this suit, of which there has been sold, corn, barley, peas, oats, and rye, to the amount of $417.45; and some grain which is included in the produce of the Springfield farm; the sheep, sold Brooks aforesaid: the cash, ($515,) which has been paid on the debt to the Savings Bank; and the income and produce of the Springfield farm for 1848, for which I have received, beyond fodder fed to the cattle, and taxes and other charges paid, $144.15. The income of the Bowker farm prior to this year, was in fodder and grain, which has been fed to the stock, except nine bushels of oats, and six bushels of beans, amounting to $10.65, which have been sold; and some buckwheat. The calves, produced from the cows the present year, are on hand, except those sold to the amount of $31.66. There are eighteen of the calves now on hand. A part of the hogs were sold to Mr. Sanderson, for which I am to receive, next spring, 650 lbs. live shoats. The grass seed, except a small quantity now in the chaff, has been sowed on the farms. Mr. Hall has had about twelve bushels of buckwheat, raised on the

Bowker farm, for which he is to account to me. I have, also, about 100 lbs. of tallow, from the cattle killed, and about 30 or 40 lbs. of lard, from the hogs kept on the Springfield farm. Of the grain aforesaid, there is none now remaining in my hands except some damaged corn. I sold to Mr. Hubbard and to Mr. Britton, railroad contractors, (then in good credit, but who have since become, as I believe, insolvent,) grain to the amount of $48.26, which is not included in said sum of $417.45."

A copy of the mortgage, referred to in the disclosure, was made a part of the same.

Upon the return of this disclosure, by the commissioner, at the August term of the Court of Common Pleas, 1849, the plaintiff moved that a receiver be appointed ; and, on motion of the trustee, it was ordered that the question of the appointment be transferred to this court, for decision.

*Snow,* for the plaintiff.

*Metcalf,* for the trustee.

WOODS, J. It appears, from the disclosure of the trustee, that, at the time of the service of the trustee process upon him, he had in his possession a large amount of personal property of the principal defendant, which had been conveyed to him in mortgage, to secure and indemnify the trustee against sundry liabilities incurred on behalf, and for the benefit of the principal defendant ; and he further discloses, that a portion of said liabilities were still subsisting, and that a portion only of the property had been sold or otherwise disposed of, at the date of the disclosure, and that the residue still remained in his possession. It does not appear, from the disclosure, that the value of the property unsold at the date of the disclosure, or the price at which it might be sold, would not exceed the amount of the balance still remaining of the liabilities of the trustee for his principal at that time, over and above the amount then already realized by him from the previous sales, and from the rents and income

of the farms, bank stock, and other sources mentioned in the disclosure.

The provision of the statute upon which the motion for the appointment of a receiver can be sustained, if at all, is as follows, namely : " If it shall ap, ear, as aforesaid, that the person summoned as trustee, had in his possession, at the time of the service of such process or afterwards, any personal property of the principal defendant, and that the same is subject to any pledge, lien, or mortgage, and at the time of said disclosure had not been sold by the trustee, the court may appoint a receiver, whose duty it shall be, under the direction of the court, to dispose of the same, if a greater amount than the sum due can be obtained therefor, and after paying the amount of such pledge, lien, or mortgage, to apply the balance as aforesaid." Rev. Stat. ch. 208, § 16.

The power of the court to appoint a receiver, and the propriety of its exercise, if possessed, under the facts and circumstances disclosed by the trustee, are the questions presented by the case, and proper for the consideration of this court.

And we think this is a case most clearly falling within the provision of the statute referred to. At the time of making the disclosure, there was personal property, mortgaged to the trustee by the principal defendant, and then in his possession, unsold. The value of the property thus unsold, as compared with the sum to which the trustee was entitled by way of indemnity, or the price which it would command on sale, or other disposition of it, did not appear by the disclosure ; and could not well be made to appear upon any disclosure of the trustee. And we are not aware that any duty rested upon the trustee, or that he was in any way required to sell or dispose of the property mortgaged. To be sure, he might at any time, after thirty days from the time of condition broken, have sold the property at auction, upon due notice given, as provided and required by the statute. Rev. Stat. ch. 132, §§ 14, 15. If he had so done, the mortgagor, at least, could not complain. That statute, however, imposes no duty, but only confers the power, to be exercised or not, at the election of the mortgagee.

Prior to the passage of the " act relating to mortgages and pledges of personal property, and property subject to any lien, created by law," approved December, 12, 1832, the pledgee of goods could not be holden as the trustee of the pledgor. *Hudson* v. *Hunt*, 5 N. H. Rep. 538.

A similar doctrine was holden in Massachusetts, under statutory provisions like those in force in this State prior to 1832. *Badlam* v. *Tucker*, 1 Pick. 389.

Mr. Justice *Story* very properly remarks, in delivering the judgment of the court in *Picquet* v. *Swan*, 4 Mason, 464, that, " the pledgee has a special property in the pledge, and is not bound to deliver it up until his incumbrance is discharged. And a creditor cannot, in this respect, have greater rights than the pledgor himself. The case of a lien is the same."

And it cannot be doubted, that in this State personal property, mortgaged, could not be attached by the trustee process, in the hands of the mortgagee, prior to the statute of December 12, 1832.

The act of December 12, 1832, already refered to, made it the duty of the court, in case a mortgagee, pledgee, or other person having a lien on the property of a debtor, should be summoned into court while the general owner had still a subsisting right, at law or in equity, to redeem such property, to make an order, that upon the payment or tender of the debt, or the performance of the contract or condition for which it was holden, the person so summoned should deliver over the property to the officer who served the process, to be by him holden, in the same manner as if it had been attached on mesne process. It will readily be seen, that in such a case, the payment or tender was necessarily made at the hazard of loss, in case the property proved to be of less value than the amount paid to discharge the lien.

Farther provision was made, by the same statute of December 12, 1832, for attaching property under mortgage, pledge, or other lien, upon first tendering to the mortgagee, pledgee, &c., the amount for which the property was so holden.

This proceeding was also attended with the like risk of loss,

upon the sale or other disposition of it, or in the event of its destruction by accident or otherwise.

A statute was passed, June, 30, 1841, containing, in the second section thereof, a provision substantially the same as that under consideration in the present case, and of which this statute is substantially a reënactment.

It will be seen, then, that, prior to the act of December 12, 1834, a mortgagee or pledgee, who held the property under a valid mortgage or pledge, could not be rendered liable, in any manner, as the trustee of the mortgagor or pledgor, whatever might be the amount or value of the property mortgaged or pledged.

And prior to the act of June 30, 1841, property so situated could not be attached and holden, either upon a writ of attachment, or upon the trustee process, without first paying or tendering the amount due and secured by the pledge or mortgage. And it was just and proper, that the property, fairly mortgaged or pledged, should not be wrested from the possession of the mortgagee or pledgee, until his full debt should be paid. Until that time, he should have the benefit of his own skill and judgment, in its management and disposition. It should not be wrested from him, and intrusted to another person, having no interest in its disposition; and, consequently, likely to be less vigilant in his endeavors to make the most of it. Such a course would be likely to result in loss and injury to him. But, still, it was proper and fitting, if it could be done without loss or detriment to the mortgagee or pledgee, that the value of the property pledged or mortgaged should be tested and ascertained, without risk or hazard to the creditor in the process; that some way, if it were possible, should be provided, whereby the creditor might obtain and apply, to the payment of such debt as he should establish against the principal creditor, any balance of property that might remain, after full satisfaction of all such debts and liabilities as it should stand pledged or mortgaged to secure the payment of, and the just and reasonable expenses attending the care and possession of it.

A provision of law, fully calculated to accomplish the objects

in view, has been enacted, and is now in force, in the 2d sec. of chap. 208, Rev. Stat. before cited.

It authorizes the appointment of a receiver by the court, in all cases where a mortgagee, pledgee, or other person having a lien upon personal property, is summoned into court, as the trustee of the mortgagor or pledgor, and it appears upon his disclosure, that, at the time of making it, there was personal property in the hands of the trustee, not sold, but still holden by him, subject to the mortgage, pledge, or other lien. And it is made the duty of such receiver, under the direction and instruction of the court, to dispose of such property, if it can be done for a greater amount than is sufficient to satisfy such sums, or to indemnify against such liabilities, as it is mortgaged, pledged or otherwise holden to pay, or to indemnify against. If a less sum, or even if the amount of the lien upon it, can be realized, it is of no avail to the creditor that it should be sold or disposed of; and in such case it is not to be done. The receiver, acting under instructions from the court, will test the question whether a greater amount can be realized than the liens resting upon the property, and if it can, it will be disposed of; and, if not, it will still remain at the disposal of the person holding the lien. Such is the intention of the statute. In this way, without hazard, loss, or injury, either to the creditor or the person holding the lien, the value of the property can be ascertained, and the just rights of all parties fairly determined. The person holding the lien, will have no reason to complain, if the full amount of the lien be satisfied, or the property in kind be restored to him without injury; while, on the other hand, the creditor will, in this way, be secured in his just rights, without being subject to the hazard of loss or injury beyond the expenses of testing the value of the property. A provision of law so highly just and beneficial, and in nowise likely to be injurious in its operation, should be liberally construed and applied, in the cases for which it was intended, in order that the full and just purposes of the statute may be accomplished. And we are of the opinion, that in cases in which it is not made to appear by the disclosure, or in some other legal manner, that the value or the sum that may be real-

ized for the property so mortgaged or pledged, upon a sale or other lawful disposition of it, will not exceed the amount of the lien resting upon it, it will ordinarily be the duty of the court, upon the application of the creditor, to appoint a receiver to test the value of the property found in the hands of the trustee, and to dispose of the same, under the directions of the court. Upon the disclosure, in the present case, the Court of Common Pleas were authorized to appoint a receiver. It appeared that, at the time of the disclosure, a large amount of personal property was still in his possession, and not disposed of; and the value thereof, as compared with the liabilities incurred by the trustee for the principal defendant, in nowise appeared.

We are of opinion, therefore, that a receiver should be appointed in the present case, according to the motion of the creditor; and the judgment of the Court is, that an order be sent down to the Court of Common Pleas, directing that a receiver be appointed.